People v Williams (2025 NY Slip Op 00349)

People v Williams

2025 NY Slip Op 00349

Decided on January 23, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 23, 2025

111867
[*1]The People of the State of New York, Respondent,
v
Matthew J. Williams, Appellant.

Calendar Date:December 11, 2024

Before:Garry, P.J., Lynch, Fisher, Powers and Mackey, JJ.

Craig S. Leeds, Albany, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the County Court of Tompkins County (Gerald Keene, J.), rendered August 25, 2017, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree and endangering the welfare of a child (two counts).
In connection with allegations that he sexually abused a 12-year-old victim during a camping trip with the victim and her 12-year-old friend, defendant was charged by indictment with one count of sexual abuse in the first degree, two counts of kidnapping in the second degree and two counts of endangering the welfare of a child. Following a jury trial,[FN1] defendant was convicted of the sexual abuse and endangering the welfare charges and sentenced to an aggregate prison term of six years, to be followed by 10 years of postrelease supervision. Defendant appeals.
We begin by recognizing that defendant conceded during summation that the evidence supported the endangering convictions (see Penal Law § 260.10 [1]). With respect to the sexual abuse conviction, defendant argues that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence, primarily attacking the victim's and the friend's credibility. Even accepting that defendant's legal sufficiency argument is adequately preserved for appellate review (see People v Tunstall, 149 AD3d 1249, 1249 [3d Dept 2017], lv denied 30 NY3d 1023 [2017]), we find both arguments unavailing.
As charged in the indictment, a conviction for sexual abuse in the first degree required proof that defendant subjected the victim to sexual contact when she was less than 13 years old and defendant was 21 years old or older (see Penal Law § 130.65 [4]). Sexual contact "means any touching of the sexual or other intimate parts of another person," whether directly or through clothing, "for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3]). Given that defendant was 32, the issue distills to whether the People proved that any sexual contact actually occurred.
The alleged encounter took place on the evening of June 17, 2016, when defendant took the victim and the friend to a remote, wooded campsite and provided them with alcohol. The victim testified that defendant touched her intimate body parts while the three were sleeping in the back of defendant's pickup truck. Following the close of the People's proof, defendant called Trevor Yaeger, a deputy sheriff, to testify about an interview he conducted with the victim and the friend on June 18, 2016. Yeager confirmed that the victim and the friend both answered in the negative when he asked if anything "physical" or inappropriate had occurred with defendant during the camping trip. However, he emphasized that they were both "very scared" during the interview and confirmed that he did not specifically ask about whether either of them had been sexually assaulted, instead attempting to determine whether they were physically hurt. Defendant also took the stand at trial and denied [*2]the allegations. Although he acknowledged that he had "blacked out from alcohol" on the evening in question, he was adamant that "no contact" with the victim had occurred.
We recognize that there were certain inconsistencies regarding the details of the encounter between the trial testimony of the victim and the friend. Even so, these discrepancies were fully explored on cross-examination and did not render the victim's or the friend's testimony incredible as a matter of law (see People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; People v Wright, 155 AD3d 1452, 1453 [3d Dept 2017], lv denied 30 NY3d 1121 [2018]). Significantly, the victim disclosed the incident almost immediately to the friend and eventually told her mother and brother. Moreover, the friend testified that defendant acknowledged the sexual contact during a telephone call she made from the police barracks around a week later. Although the recording of this call malfunctioned, this issue was explored during cross-examination and the jury could choose to believe the friend's recounting of defendant's statements notwithstanding the lack of a recording (see generally People v Toland, 2 AD3d 1053, 1055 [3d Dept 2003], lv denied 2 NY3d 808 [2004]). There was also physical evidence generally corroborating the victim's and the friend's recounting of the evening, including the fact that police found broken bottles at the campsite upon investigation (see People v Morgan, 230 AD3d 864, 865 [3d Dept 2024], lv granted 42 NY3d 973 [2024]). On this record, we conclude that the verdict is both legally sufficient and in accord with the weight of the evidence (see People v Hufnagle, 230 AD3d 1546, 1547 [4th Dept 2024]; People v Kelsey, 174 AD3d 962, 964 [3d Dept 2019], lv denied 34 NY3d 982 [2019]).
Nor are we persuaded by defendant's argument that he was deprived of a fair trial when County Court failed to discharge from the jury panel jurors Nos. 7 and 8, whom he contends were grossly unqualified to continue serving. As defendant concedes, this argument was not preserved for appellate review, as he failed to object to County Court's procedure in questioning the jurors or its decision not to discharge them (see People v Young, 160 AD3d 1206, 1209 [3d Dept 2018], lv denied 31 NY3d 1155 [2018]). In any event, even if juror No. 7 did see defendant in handcuffs while returning from a lunch recess, "[i]t is well settled that a juror's brief and inadvertent viewing of a defendant in restraints does not by itself [deprive a defendant of a fair trial]" (People v Fioravantes, 229 AD2d 784, 786 [3d Dept 1996], lv denied 89 NY2d 920 [1996]; see People v Harper, 47 NY2d 857, 858 [1979]). Here, County Court engaged in a probing and tactful inquiry into juror No. 7's ability to continue serving on the jury and, based upon her responses, appropriately determined that she was not grossly unqualified (compare People v Lapage, 57 AD3d 1233, 1236 [3d Dept 2008]). County Court further [*3]conducted a proper inquiry of juror No. 8 and, based upon this juror's assurances that he had not fallen asleep during any portion of the proceedings and had heard all of the testimony, did not err in declining to discharge him (see People v Robinson, 121 AD3d 1179, 1181 [3d Dept 2014]; People v Buel, 53 AD3d 930, 931 [3d Dept 2008]). Accordingly, defense counsel's failure to object to County Court's procedure in questioning these jurors and its decision to keep them on the jury did not, as defendant contends, deprive him of meaningful representation.
Defendant further argues that he was deprived of a fair trial due to improper prosecutorial remarks on summation. Although this argument is unpreserved for appellate review since no objections were raised (see People v Hatch, 230 AD3d 908, 912 n 2 [3d Dept 2024], lv denied 42 NY3d 1020 [2024]), defendant both raises this issue in the context of an ineffective assistance of counsel claim and requests that we invoke our interest of justice jurisdiction to reverse the conviction.
Upon our review, we find that the vast majority of the prosecutor's summation constituted fair commentary on the trial evidence and the reasonable inferences that could be drawn therefrom, particularly given defendant's summation challenging the credibility of both the victim and the friend. We do agree that the prosecutor improperly commented that it was the jury's function to protect the young victim — commentary that misstates the jury's "ultimate responsibility — determining facts relevant to guilt or innocence" (People v Calabria, 94 NY2d 519, 523 [2000]; see People v Riback, 13 NY3d 416, 423 [2009]; People v Wright, 133 AD3d 1097, 1098 [3d Dept 2015]; People v Ballerstein, 52 AD3d 1192, 1994 [4th Dept 2008]; People v LaPorte, 306 AD2d 93, 97 [1st Dept 2003]). Even so, there was no pattern of misstatements that compromised defendant's right to a fair trial (see People v Lewis, 224 AD3d 1143, 1153 [3d Dept 2024], lv denied 42 NY3d 939 [2024]; People v Leigh, 208 AD3d 1463, 1464 [3d Dept 2022]; compare People v Ballerstein, 52 AD3d at 1994; People v Andre, 185 AD2d 276, 278 [2d Dept 1992]). Moreover, County Court properly instructed the jury during its final charge that "[they] alone are the judges of the facts" and that they were "to consider only the evidence" presented at trial (see People v Lewis, 224 AD3d at 1153; People v Leigh, 208 AD3d at 1464; compare People v Ballerstein, 52 AD3d at 1994; People v Andre, 185 AD2d at 278). Accordingly, we cannot conclude that counsel's failure to object to the prosecutor's summation constituted ineffective assistance of counsel (see People v Rudge, 185 AD3d 1214, 1217 [3d Dept 2020], lv denied 35 NY3d 1070 [2020]; People v Stevenson, 129 AD3d 998, 999 [2d Dept 2015], lv denied 37 NY3d 960 [2015]). The other alleged deficiencies defendant raises with respect to counsel's performance, including failing to mention mitigating factors during sentencing, did not, when considering the representation [*4]as a whole, deprive him of meaningful representation (see People v Lindsey, 172 AD3d 1764, 1768 [3d Dept 2019]; People v Smith, 300 AD2d 745, 745-746 [3d Dept 2002], lv denied 99 NY2d 620 [2003]). Contrary to defendant's contention, even when considering the mitigating factors reflected in the presentence report, we do not find the sentence imposed to be unduly harsh and severe (see CPL 470.15 [6] [b]).
Garry, P.J., Fisher, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The kidnapping charges were dismissed prior to trial.